**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1896
_____

WANDA R.D. WILLIAMS, in her individual and official capacity
as an elected member of Harrisburg City Council;
EUGENIA SMITH, in her individual capacity as an elected member
of Harrisburg City Council; BRAD KOPLINSK in his individual and official capacity
as an elected member of Harrisburg City Council; SANDRA R. REID, in her individual
and official capacity as an elected member of Harrisburg City Council;
SUSAN WILSON-BROWN, in her individual and official capacity as an elected
member of Harrisburg City Council; DANIEL C. MILLER, in his individual and official
capacity as the elected Controller for the City of Harrisburg;
JOHN CAMPBELL, in his individual and official capacity as the elected
Treasurer for the City of Harrisburg,

Appellants

v.

GOVERNOR OF PENNSYLVANIA;
WILLIAM B. LYNCH, sued in his official capacity

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-12-cv-01211)
District Judge:  Hon. John E. Jones
_____

Argued November 21, 2013

Before:  AMBRO, SMITH, and CHAGARES, <u>Circuit Judges</u>.

(Filed: January 7, 2014)

Paul A. Rossi, Esq. (ARGUED)
873 East Baltimore Pike
Suite 705

Kennet Square, PA 19348
        *Counsel for Appellants*

Sean A. Kirkpatrick, Esq. (ARGUED)
Office of Attorney General
Appellate Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
        *Counsel for Appellees*

_____

OPINION
_____

CHAGARES, <u>Circuit Judge</u>.

Several members of the government of the City of Harrisburg, Pennsylvania,

appeal the District Court's dismissal of their complaint for lack of standing. For the

following reasons, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly

summarize the facts relevant to our decision. The proud City of Harrisburg, the capital of

the Commonwealth of Pennsylvania, has recently come upon difficult financial times. It

is currently burdened with several hundred million dollars of debt after a large capital

project to upgrade its trash incinerator went awry. To help alleviate its financial strain,

the City's mayor (who is not a plaintiff in this suit) applied for Harrisburg to be

designated a financially distressed municipality under Pennsylvania's Financially

Distressed Municipalities Act, 53 Pa. Cons. Stat. §§ 11701.101-501 ("Act 47"). Act 47

allows financially distressed municipalities to request technical and financial assistance

from the State. The State granted the mayor's request on December 15, 2010. Under Act

47, as it then existed, the State formulated a recovery plan and presented it to the City. It was then up to the City to decide whether to adopt the plan – if the City refused, the State's assistance would simply end. On July 19, 2011, Harrisburg's City Council rejected the proposed recovery plan by a vote of four to three.

The Pennsylvania state legislature and the Governor then amended Act 47 in several critical ways. The Act 47 Amendments granted the Governor the power to designate a municipality as financially distressed and permitted him to appoint a receiver. 53 Pa. Cons. Stat. §§ 11701.602(b), 702(a). They authorized the Governor, or his designated receiver, to collect funds, obtain emergency financial aid, enter into contracts, and exercise any other power necessary to "ensure the provision of vital and necessary services" on behalf of the City. Id. § 11701.604(a)(1)-(5). As is most relevant to this appeal, the amendments authorized the Governor to issue any order to any city official that is necessary to implement any provision of a recovery plan. Id. § 11701.604(b). These orders can be enforced by obtaining a writ of mandamus from the Commonwealth Court, and local officials are prohibited from taking any action that would interfere with the plan's implementation. Id. §§ 11701.606, 604(b).

Pursuant to the Act 47 Amendments, the Governor formally designated Harrisburg a financially distressed municipality on October 24, 2011. In due time, the Commonwealth Court approved his request to appoint a receiver and his proposed recovery plan. Part of that plan required the City Council to implement a 1% increase in the City's earned income tax. Pursuant to the Act 47 Amendments, the Receiver ordered the council to pass the tax hike, but the council initially refused. The receiver then filed a

3

mandamus petition with the Commonwealth Court to compel compliance. The Commonwealth Court issued the writ on August 27, 2012 (after the plaintiffs commenced this suit) directing the "City Council" to enact the temporary tax increase. Walker v. City of Harrisburg, No. 569 M.D. 2011, 2012 WL 3661779, at *2 (Pa. Commw. Ct. Aug. 27, 2012). The City Council ultimately enacted the 1% increase in October 2012.

Several members of Harrisburg's city government brought this suit in their official and individual capacities on June 26, 2012, prior to the writ being issued and prior to actually enacting the 1% increase. The plaintiffs include five members of the Harrisburg City Council (Wanda Williams, Eugenia Smith, Brad Koplinski, Sandra Reid, and Susan Wilson-Brown), the city controller (Daniel Miller), and the city treasurer (John Campbell). The suit was not brought by the mayor, or in the name of the City of Harrisburg itself. The plaintiffs' complaint alleges that the Act 47 Amendments deprived them of due process and equal protection under the Fourteenth Amendment, and violated the "special laws" provision of the Pennsylvania Constitution.

The District Court dismissed the complaint for lack of standing. It held that the plaintiffs failed to demonstrate that they possessed the authority to bring suit in their official capacities on behalf of the City, and even if they had such authority, the political subdivision standing doctrine prevented them from bringing it in such a capacity. It also held that they lacked standing in their individual capacities because they had not pled that they had suffered any injury as private citizens. In their opposition to the Governor's motion to dismiss, the plaintiffs urged that they would suffer an injury in their individual capacities if they failed to comply with a writ of mandamus and if the Commonwealth

4

Court held them in contempt.  The District Court held that this proposed injury was speculative and still insufficient to grant them standing.  The plaintiffs timely appealed.

## II.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 1331.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of the District Court's grant of a motion to dismiss for lack of standing is plenary.  Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 124 (3d Cir. 2006).  We must accept all factual allegations as pled in the complaint as true, and construe them in the light most favorable to the plaintiffs.  Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 192 (3d Cir. 2009).  It is the plaintiffs' burden to establish standing.  Berg v. Obama, 586 F.3d 234, 238 (3d Cir. 2009).

## III.

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006).  "The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts."  Hein v. Freedom from Religion Foundation, Inc., 551 U.S. 587, 598 (2007).  Federal courts can only pass on constitutional questions "when the question is raised by a party whose interests entitle him to raise it."  Id. (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982)).

One element of Article III is that plaintiffs must establish standing to sue.  To establish Article III standing, an injury must be "concrete, particularized, and actual or

imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2752 (2010). A particularized injury is one that affects the plaintiff in a personal and individual way. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992). The injury must be "certainly impending"; allegations of possible future injury are insufficient. Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013).[1]

On appeal, the only injury that the plaintiffs submit is sufficient to grant them standing is the threat of contempt sanctions if they fail to comply with a Commonwealth Court writ of mandamus. They claim that this grants them standing as individuals because they may be personally liable for contempt penalties, such as fines or jail time, should they fail to comply.[2] Because this injury is speculative, it is wholly insufficient to confer standing.

Any injury that the plaintiffs might receive by failing to comply with a Commonwealth Court's writ of mandamus is not "certainly impending." Clapper, 133 S. Ct. at 1147. As the plaintiffs conceded at oral argument, the City Council has already enacted the 1% tax increase that was the subject of the outstanding writ of mandamus. The plaintiffs point to no way in which they could be injured now that they have actually complied with the writ.

---

[1] In addition to establishing that they have met the requirements of Article III, the plaintiffs must also satisfy a court that prudential concerns do not interfere with their standing. Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 177-78 (3d Cir. 2000). As our decision turns on the plaintiffs' failure to meet an element of Article III standing, we need not decide if we should deny them standing on prudential grounds.

[2] The plaintiffs do not argue that they have standing in their official capacities, or that they have suffered any other cognizable injury.

Any injury on account of some hypothetical future writ of mandamus is also speculative. Such an injury would only occur if the Receiver issued them another order, if they chose not to heed that order, if the Receiver then sought a writ of mandamus, if the Commonwealth Court granted the writ, if the Council then still refused to comply with the order, if the Receiver moved for contempt sanctions against them, and if the Commonwealth Court then held them in contempt. We have held that an injury does not meet the imminence requirement if "one cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if.'" Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 297-98 (3d Cir. 2003). It would appear to take at least seven "ifs" for the plaintiffs to even approach an injury that we might consider cognizable. The plaintiffs have not suffered any injury that is sufficient to grant them standing under Article III, and any potential future injury is entirely speculative.[3]

## IV.

For the foregoing reasons, we will affirm the order of the District Court dismissing the plaintiffs' complaint for lack of standing.

---

[3] The plaintiffs also contend that the District Court's decisions to abstain from exercising jurisdiction over their state constitutional claim and to deny them leave to amend their complaint were in error. These contentions are also without merit.